UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

STATE OF NEW YORK, THE NEW YORK
STATE DEPARTMENT OF ENVIRONMENTAL
CONSERVATION, and BASIL SEGGOS, in his
capacity as Acting Commissioner of the
New York State Department of Environmental
Conservation,

                                Plaintiffs,

        -Against-

NOVELIS CORPORATION, ASHLAND INC., OFFICE
MAX INCORPORATED, CHEVRON U.S.A. INC.,
MILLER BREWING COMPANY, NESTLE USA, INC.,
and NIAGARA MOHAWK POWER CORPORATION
d/b/a NATIONAL GRID,

                                Defendants.

COMPLAINT

1:16 -CV- 0592 (LEK/DJS)

---

The State of New York, the New York State Department of Environmental Conservation ("DEC"), and Basil Seggos, as Acting Commissioner of Environmental Conservation (collectively hereinafter "the State") by and through their attorney, Eric T. Schneiderman, Attorney General of the State of New York, for their complaint, allege as follows:

## PRELIMINARY STATEMENT

1.    This action is brought pursuant to the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601 *et seq.*, as amended by the Superfund Amendments and Reauthorization Act of 1986, Pub. L. 99-499 ("CERCLA"). The State seeks to recover response costs that have been and will be incurred by the State arising from or

attributable to hazardous substances disposed of by the defendants at the Sealand Restoration ("Sealand") Site located in the Town of Lisbon in St. Lawrence County, New York.

2.     The State seeks judgment to recover from defendants the unreimbursed response costs incurred and to be incurred by the State in responding to the release of hazardous substances at the Sealand Restoration Site.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over the subject matter of this action pursuant to CERCLA §§ 107(a), 113(b), 42 U.S.C. §§ 9607(a), 9613(b) and 28 U.S.C. § 1331.

4.     Venue is proper in this district pursuant to CERCLA § 113(b), 42 U.S.C. § 9613(b) and 28 U.S.C. § 1391(b), because the claims arose, and the actual releases of hazardous substances occurred, in this district.

## PARTIES

5.     Plaintiff, the State of New York is a body politic and sovereign entity, and brings this action on behalf of itself and as *parens patriae*, trustee, guardian, and representative on behalf of all residents of the State, and particularly those individuals who live in the vicinity of the Site.

6.     Plaintiff DEC is an agency of the State and plaintiff Basil Seggos, as Acting Commissioner of Environmental Conservation is DEC's chief executive. DEC and Commissioner Seggos are responsible for the protection of human health and the environment from hazardous substances at and being released from the Site.

7.     Plaintiffs are empowered to bring this action to recover response costs pursuant to 42 U.S.C. § 9601 *et seq.*

8.     Defendant Novelis Corporation ("Novelis") is a corporation organized under the laws of Texas with its principal place of business in Atlanta, Georgia at 3560 Lenox Road, Atlanta,

Georgia. At all relevant times, its predecessor in interest, Alcan Sheet and Plate Company, owned and operated an aluminum manufacturing facility in Oswego, New York.

9.  Defendant Ashland Inc. ("Ashland") is a successor in interest to Ashland Chemical, Inc. and Ashland Oil. Ashland is organized under the laws of Kentucky with its principal place of business in Covington, Kentucky at 50 E. River center Boulevard, Covington, Kentucky.

10. Defendant Office Max Incorporated ("Office Max"), formerly known as Boise-Cascade Company, is a corporation organized under the laws of Delaware New York with its principal offices in Boise, Idaho at One Jefferson Square, Boise, Idaho. At all relevant times, Boise-Cascade was owner and operator of Boise-Cascade Lowville facility located in Lowville, New York.

11. Defendant Chevron U.S.A. Inc. ("Chevron") is a corporation organized under the laws of New York with its principal offices in Monroe, New York at 13 Chevron Road, Monroe, New York.

12. Defendant Miller Brewing Company, ("Miller") is a corporation organized under the laws of Wisconsin with its principal offices in Milwaukee, Wisconsin at 3939 W. Highland Boulevard, Milwaukee, Wisconsin. At all relevant times, Defendant Miller Brewing Company was the owner and operator of a facility in Fulton, New York.

13. Defendant Nestle USA, Inc. ("Nestle") is a corporation organized under the laws of Delaware with its principal place of business at 383 Main Avenue, Norwalk, Connecticut. Nestle is a successor in interest to Nestle Foods Corporation which operated a facility in Fulton, New York.

14. Defendant National Grid USA Service Company, Inc. ("National Grid") is a corporation organized under the laws of Massachusetts with its principal offices in Waltham, Massachusetts at 40 Sylvan Road, Waltham, Massachusetts. It is the successor in interest to Niagara Mohawk Power Corporation ("NIMO"). At all relevant times, National Grid's predecessor in

interest, Niagara Mohawk Power Corporation operated the Oswego Steam Station and the Niagara Mohawk Power Corporation Fire Training School.

## BACKGROUND AND FACTUAL ALLEGATIONS

The Site

15.     The Sealand Restoration, Inc., Site (the "Site") is located on Pray Road in the Town of Lisbon in St. Lawrence County, New York. The Site was a former dairy farm and consists of 210 acres.

16.     In June, 1977, Sealand Restoration, Inc. purchased the Site to operate an oil disposal facility, and in 1977 obtained approval and a Part 360 Permit from the New York State Department of Environmental Conservation ("DEC") to conduct oil disposal operations.

17.     From 1977 until 1980 Sealand operated the Site. During this time period it violated its Part 360 Permit by constructing a disposal cell, and by accepting unauthorized hazardous wastes and substances. During this time period, Sealand accepted wastes, including hazardous wastes and hazardous substances from approximately 107 generators. Unauthorized contaminated petroleum wastes, hazardous wastes and hazardous substances were either spread on the ground, disposed in a pit or left in 55 gallon drums and tanks on the Site which resulted in, *inter alia*, illegal soil contamination, illegal sludge contamination in the disposal cells, and the illegal disposal of 55 gallon drums and tanks of hazardous wastes.

18.     In April, 1980, DEC ordered Sealand to cease all operations, and in November 1981 Sealand entered into an Order on Consent with the New York State Department of Environmental Conservation ("DEC") to undertake a cleanup of the Site, and shortly thereafter defaulted on the Order and filed for bankruptcy in 1982.

19.     The State of New York and DEC have determined that Sealand has no resources to undertake the remediation required at the Site.

The State's Response

20. DEC and its contractors conducted remedial investigations at the Site from 1983 through 1987. As part of an initial remedial investigation completed in 1983, St Lawrence County conducted a limited removal action at the site with monies from a local assistance grant from the New York State Legislature. This action addressed only the drum storage area and a waste oil tank and tanker trailer. A more thorough Remedial Investigation and Feasibility Study was conducted by DEC contractors in 1986 and 1987 which resulted in a revised removal plan. The Remedial Investigation revealed that various hazardous substances and hazardous wastes had been released and contaminated soils, groundwater, surface water and existed in liquids released onsite. These hazardous substances included, *inter alia*, vinyl chloride, acetone, 1,1,1 trichloroethane, trichloroethene, toluene, benzene, ethylbenzene, PCBs and similar volatile organic chemicals. In addition characteristic hazardous wastes were found in abandoned waste tanks and drums.

21. Beginning in 1989 through 1990, DEC's contractors completed removal actions at the site recommended by the revised removal plan and which included the removal of 1445 drums, 4,762 cubic yards of contaminated soil, and 375,000 gallons of liquid sludge from the cell disposal area. The cell disposal area was backfilled, capped with an impermeable cover, and a leachate monitoring system was installed.

22. New York State and the DEC have incurred response costs of $14,897,006.65 to undertake the removal and disposal of contaminated soil, sludge and drums containing hazardous substances from the Site.

Activities of the Settling Defendants

23. The State and the Federal government have identified the potentially responsible parties who contributed hazardous substances to the Site through DEC records, records of Sealand Restoration, Inc., and records from the potentially responsible parties.

24. During the period which Sealand operated from 1977 to 1980, Novelis' predecessor in interest, Alcan Sheet and Plate, sent hazardous wastes and hazardous substances to the Sealand Site in Lisbon, New York for disposal from its Oswego facility.

25. During the period which Sealand operated from 1977 to 1980, Ashland's predecessor in interest, Ashland Chemical, Inc. sent hazardous wastes and hazardous substances to the Sealand Site in Lisbon, New York for disposal.

26. During the period which Sealand operated from 1977 to 1980, Office Max's predecessor in interest, Boise-Cascade, sent hazardous wastes and hazardous substances to the Sealand Site in Lisbon, New York for disposal from its Lowville facility.

27. During the period which Sealand operated from 1977 to 1980, Chevron sent hazardous wastes and hazardous substances to the Sealand Site in Lisbon, New York for disposal.

28. During the period which Sealand operated from 1977 to 1980, Miller sent hazardous wastes and hazardous substances to the Sealand Site in Lisbon, New York for disposal from its Fulton facility.

29. During the period which Sealand operated from 1977 to 1980, Nestle Foods Corporation sent oils and hazardous wastes and hazardous substances to the Sealand Site in Lisbon, New York for disposal from its Fulton facility.

30. During the period which Sealand operated from 1977 to 1980, NIMO sent oils and hazardous wastes and hazardous substances to the Sealand Site in Lisbon, New York for disposal from its Oswego Steam facility and its Fire Training facility.

## CLAIM RELIEF – CERCLA 107(a) LIABILITY:

31. Plaintiffs repeat and reallege paragraphs 1-30 as fully set forth here.

32. Vinyl chloride, acetone, 1,1,1 trichloroethane, trichloroethene, toluene, benzene, ethylbenzene, and PCBs, and similar volatile organic chemicals and characteristic hazardous wastes are hazardous substances as defined by CERCLA § 101(14), 42 U.S.C. § 9601(14).

33. The release of vinyl chloride, acetone, 1,1,1 trichloroethane, trichloroethene, toluene, benzene, ethylbenzene, PCBs, and similar volatile organic chemicals and characteristic hazardous wastes from the Site has caused contamination of the environment of the State, including but not limited to soils, groundwater and air within the meaning of CERCLA §§ 101(22) and 107(a), 42 U.S.C. §§ 9601(22) and 9607(a).

34. The Site is a "facility" within the meaning of CERCLA §§ 101(9) and 107(a) (1), 42 U.S.C. §§ 9601(9) and 9607(a) (1).

35. There was a "release" or "threatened release," as defined in CERCLA § 101(22), 42 U.S.C. § 9601(22), of hazardous substances into the environment at and from the Site, causing soil, groundwater and air to become contaminated.

36. The release of hazardous substances into the environment at and from the Site has caused the State to incur response costs not inconsistent with the National Contingency Plan within the meaning of CERCLA § 101(25), 42 U.S.C. § 9601(25), and will continue to cause the State to incur costs not inconsistent with the National Contingency Plan.

37. The defendants are "persons" within the meaning of CERCLA §§ 101(21) and 107(a), 42 U.S.C §§ 9601(21) and 9607(a).

38. The defendants are within the class of persons responsible for the release of hazardous substances to the environment from a facility located on the Site as persons who arranged for the disposal of hazardous substances at the Site pursuant to CERCLA § 107(a), 42 U.S.C. § 9607(a).

39. The defendants arranged for the disposal of hazardous substances at the Site of within the meaning of CERCLA §§ 107(a) (3), 42 U.S.C. §§ 9607(a) (3), and are liable for response costs incurred and to be incurred by the State in responding the contamination of the Site pursuant to CERCLA §107(a), 42 U.S.C. § 9607(a).

40. The defendants are each strictly, jointly and severally liable for the State's past and future costs incurred not inconsistent with the National Contingency Plan pursuant to CERCLA § 1077(a), 42 U.S.C. § 9607(a).

## REQUEST FOR RELIEF

**WHEREFORE**, the State requests a judgment against defendants as follows:

(a) Granting a monetary award against each defendant, jointly and severally, for the State's unreimbursed response costs incurred arising from or related to the disposal and release into the environment of hazardous substances and hazardous wastes at and from the Site not inconsistent with the National Consistency Plan, in an amount to be determined, and a declaration that defendants are liable for the State's future costs of response incurred in connection with the Site;

(b) Awarding to plaintiffs their attorneys' fees, costs and expenses, and prejudgment interest, as allowed by law; and

(c)     Awarding any such other damages and further relief as this Court deems just and proper.

Dated: Albany, New York
       May 20, 2016

                              ERIC T. SCHNEIDERMAN
                              Attorney General of the State of New York

By:  _____
     JAMES C. WOODS
     Assistant Attorney General
     Bar Number: 1766864
     *Attorney for Plaintiffs*
     Environmental Protection Bureau
     New York State Department of Law
     The Capitol
     Albany, New York 12224
     Tel: (518) 776-2418
     Jamie.Woods@ag.ny.gov